IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LORETTA HIDALGO,

       Plaintiff,

vs.                                                                      1:19-cv-00268-LF

ANDREW M. SAUL,[1] Commissioner
of the Social Security Administration,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Loretta Hidalgo's Motion to Reverse or Remand the Administrative Decision (Doc. 18) and Memorandum Brief in Support of Plaintiff's Motion to Reverse or Remand the Administrative Agency Decision (Doc. 19), which was fully briefed on February 10, 2020. *See* Docs. 23, 24, 25. The parties consented to my entering final judgment in this case. Docs. 8, 9, 10. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") failed to properly weigh the opinion of Ms. Hidalgo's treating psychiatrist, Dr. Joseph Luzius. I therefore GRANT Ms. Hidalgo's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

**I.**      **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.     Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.     Background and Procedural History

Ms. Hidalgo was born in 1976, completed the eleventh grade, and worked as a certified nurse assistant in a nursing home; as a secretary and dispatcher at fertilizer plants; and as a waitress, cashier, and cook at Pizza Hut. AR 38−43, 223, 238−41, 251.[4] Ms. Hidalgo filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Document 15-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

("SSI") on April 29, 2016, alleging disability since August 4, 2013[5] due to "back problems."  AR 221–37, 250.  The Social Security Administration ("SSA") denied her claims initially on September 8, 2016.  AR 138–42.  The SSA denied her claims on reconsideration on November 4, 2016.  AR 145–50.  Ms. Hidalgo requested a hearing before an ALJ.  AR 153–54.  On November 21, 2017, ALJ Ben Ballengee held a hearing.  AR 29–85.  ALJ Ballengee issued his unfavorable decision on May 18, 2018.  AR 9–27.

The ALJ found that Ms. Hidalgo met the insured requirements of the Social Security Act through March 31, 2019.  AR 14.  At step one, the ALJ found that Ms. Hidalgo had not engaged in substantial, gainful activity since May 2, 2016, her amended alleged onset date.  *Id.*  At step two, the ALJ found that Ms. Hidalgo suffered from the following severe impairments:  obesity, lumbar degenerative disc disease, depression, anxiety, and post-traumatic stress disorder.  *Id.*  The ALJ found Ms. Hidalgo's obsessive-compulsive disorder and sleep apnea were non-severe impairments.  AR 15.

At step three, the ALJ found that none of Ms. Hidalgo's impairments, alone or in combination, met or medically equaled a Listing.  AR 15–17.  Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Hidalgo's RFC.  AR 17–20.  The ALJ found Ms. Hidalgo had the RFC to perform light work

> except that she can occasionally climb ramps and stairs.  She can never climb ladders, ropes, or scaffolds.  She can occasionally stoop, kneel, crouch, and crawl.  She should never be exposed to unprotected heights; moving mechanical parts; extreme cold; or vibration.  Mentally, she is limited to performing simple, routine, and repetitive tasks but not at a production-rate pace.  In the use of judgment, she is limited to simple work-related decisions.  She can occasionally interact appropriately with supervisors and coworkers.  She can never engage in contact with the public.  She can adapt to occasional changes in a routine work setting.

---

[5] Ms. Hidalgo later filed a motion to amend her onset date to May 2, 2016, which the ALJ granted.  AR 36, 202.

AR 17.

At step four, the ALJ concluded that Ms. Hidalgo was unable to perform her past relevant work as a nurse assistant, waitress (informal), fast-food worker, fertilizer mixer, shipping clerk, or dispatcher. AR 20. The ALJ found Ms. Hidalgo not disabled at step five after concluding there were jobs that exist in significant numbers in the national economy that Ms. Hidalgo could perform—such as router, ad material distributor, and routing clerk. AR 21–22.

Ms. Hidalgo requested review of the ALJ's unfavorable decision by the Appeals Council. AR 219–20. On March 6, 2019, the Appeals Council denied the request for review. AR 1–6. Ms. Hidalgo timely filed her appeal to this Court on March 26, 2019. Doc. 1.

**IV.     Ms. Hidalgo's Claims**

Ms. Hidalgo raises six main arguments for reversing and remanding this case: (1) the ALJ failed to apply the correct legal standards in evaluating the opinion of treating provider Paul Gooris, PA-C; (2) the ALJ failed to apply the correct legal standards in evaluating the opinion of treating physical therapist Nancy Allen; (3) the ALJ failed to apply the correct legal standards in evaluating the opinion of treating psychiatrist Dr. Joseph Luzius; (4) the ALJ failed to properly analyze whether she met a Listing at step three; (5) in determining her RFC, the ALJ failed to do a proper function-by-function assessment of her need for a sit/stand option, her need for frequent absences and rest breaks, her concentration and pace deficits, and her limitations in the ability to interact with the public, coworkers, and supervisors; (6) the ALJ's RFC errors tainted his step-five findings. *See* Doc. 19. Because I remand based on the ALJ's failure to properly weigh the opinion of treating psychiatrist Dr. Luzius, I do not address the other alleged errors, which "may be affected the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

5

V.     **Analysis**

Ms. Hidalgo argues that the ALJ failed to conduct a proper two-step treating physician analysis of treating psychiatrist Dr. Luzius' opinion. Doc. 19 at 12–15. She further argues that the ALJ failed to give proper weight to Dr. Luzius' opinion and "failed to provide enough basis for meaningful review" of the weight he gave Dr. Luzius' opinion. *Id*. at 14. The Commissioner argues that '[g]iven the evidence in the record, it was reasonable for the ALJ to accord less weight to the opinion of [Dr. Luzius], even if some of the reasons given by the ALJ might not withstand scrutiny." Doc. 23 at 10. I agree with Ms. Hidalgo.

In analyzing whether a treating source opinion is entitled to controlling weight, the ALJ must perform a two-step process. First, the ALJ must consider whether the opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2); *Watkins*, 350 F.3d at 1300). If the opinion meets both criteria, the ALJ must give the treating source's opinion controlling weight. *Id*. To give anything less than controlling weight, the ALJ must demonstrate with substantial evidence that the opinion (1) is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," or (2) is "inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2) (effective March 27, 2017).

If the ALJ does not assign a treating source's opinion controlling weight, step two of the analysis requires the ALJ to apply the six factors listed in the regulations to determine whether a treating source's opinion should be rejected altogether or assigned some lesser weight:

1. **Examining relationship**:  more weight is given to the opinion of a source who has examined the claimant than to one who has not;
2. **Treatment relationship**:  more weight is given to the opinion of a source who has treated the claimant than to one who has not; more weight is given to

6

      the opinion of a source who has treated the claimant for a long time over several visits and who has extensive knowledge about the claimant's impairment(s);
3. **Supportability:** more weight is given to a medical source opinion which is supported by relevant evidence (such as laboratory findings and medical signs), and to opinions supported by good explanations;
4. **Consistency:** the more consistent the opinion is with the record as a whole, the more weight it should be given;
5. **Specialization**: more weight is given to the opinion of a specialist giving an opinion in the area of his/her specialty; and
6. **Other factors:** any other factors that tend to contradict or support an opinion.

*See* 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6) (effective March 27, 2017); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Watkins*, 350 F.3d at 1301.  As the first two factors make clear, even if an ALJ determines that a treating source opinion is not entitled to controlling weight, the opinion still is entitled to deference.  *Watkins* 350 F.3d at 1300.  "Under the regulations, the agency rulings, and our case law, an ALJ must give good reasons in [the] notice of determination or decision for the weight assigned to a treating [source's] opinion." *Id*. (internal quotation and citations omitted); *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003); 20 C.F.R. § 404.1527(c)(2) (effective March 27, 2017).  The reasons must be "tied to the factors specified in the cited regulations" and must be "sufficiently specific."  *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citing *Watkins*, 350 F.3d at 1300–01); *see also* 20 C.F.R. § 404.1527(c)(2) (effective March 27, 2017).

      Dr. Luzius began treating Ms. Hidalgo on June 14, 2016.  AR 502–03.  He saw her again on July 19, 2016.  AR 504.  Dr. Luzius diagnosed Ms. Hidalgo with major depressive disorder, post-traumatic stress disorder, and obsessive-compulsive disorder.  AR 503–04.  He prescribed medication for her diagnosed mental impairments and referred her for therapy at the same clinic where he worked, Jemez Behavioral Health Clinic.  AR 504–06.  Ms. Hidalgo started therapy with Shanna Parker at Jemez Behavioral Health Clinic on October 27, 2016.  AR 506–09.  Ms.

7

Hidalgo engaged in regular therapy sessions with Ms. Parker, seeing her 10 times from October 2016 through January 2017.  *See* AR 506–18.  On February 2, 2017, Ms. Hidalgo asked Ms. Parker to complete a mental health questionnaire.  AR 519.  Ms. Parker stated that she would review the questionnaire with Dr. Luzius and "staff it with [her] supervisor."  *Id*.

On February 3, 2017, Dr. Luzius completed a Mental Questionnaire and a Mental Residual Functional Capacity Assessment ("MRFCA").  AR 410–16.  Dr. Luzius opined that Ms. Hidalgo met Listing § 12.04 (Depressive, Bipolar and Related Disorders), Listing § 12.06 (Anxiety and Obsessive-Compulsive Disorders), and Listing § 12.15 (Trauma and Stressor-Related Disorders).  AR 411–14.  In the MRFCA, Dr. Luzius opined that Ms. Hidalgo had the following moderate and marked mental limitations:

Understanding and Memory

- Moderate limitation in the ability to remember locations and work-like procedures;
- Moderate limitation in the ability to understand and remember very short and simple instructions;
- Marked limitation in the ability to understand and remember detailed instructions.

Sustained Concentration and Persistence

- Moderate limitation in the ability to carry out very short and simple instructions;
- Marked limitation in the ability to carry out detailed instructions;
- Marked limitation in the ability to maintain attention and concentration for extended periods;
- Moderate limitation in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- Moderate limitation in the ability to sustain an ordinary routine without special supervision;
- Marked limitation in the ability to work in coordination and proximity to others without being distracted by them;
- Moderate limitation in the ability to make simple work-related decisions;
- Marked limitation in the ability to complete a normal work-day and work-week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

8

Social Interactions

- Marked limitation in the ability to interact appropriately with the general public;
- Moderate limitation in the ability to ask simple questions or ask for assistance;
- Marked limitation in the ability to accept instructions and respond appropriately to criticism from supervisors;
- Marked limitation in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- Moderate limitation in the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.

Adaptation

- Moderate limitation in the ability to respond appropriately to changes in the work setting;
- Moderate limitation in the ability to be aware of normal hazards and take proper precautions;
- Moderate limitation in the ability to travel in unfamiliar places or use public transportation;
- Marked limitation in the ability to set realistic goals or make plans independently of others.

AR 415–16.

The ALJ weighed Dr. Luzius' opinions as follows: "I give moderate weight to the opinion of Dr. Luzius because he offered a checklist opinion with little or no explanation. Dr. Luzius offers opinions concerning the use of technical terms such as 'marked' B criteria of which he has no understanding of the significance (8F)." AR 19.

The ALJ failed to complete either step of the treating physician analysis. The ALJ failed to complete the first step of the treating physician analysis because the ALJ's opinion contains no discussion of whether Dr. Luzius' opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques" or whether it "is consistent with the other substantial evidence in the record." *Pisciotta*, 500 F.3d at 1077. The Commissioner argues that the ALJ "reasonably found [Dr. Luzius' opinion was] entitled to lesser weight because [it] was

9

inconsistent with the record." Doc. 23 at 10. The ALJ, however, never found Dr. Luzius' opinion inconsistent with the record. *See* AR 19. This Court cannot rely on explanations not provided by the ALJ. *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process."). The Court thus concludes that the ALJ erred in not completing the first step of the treating physician analysis.[6]

---

[6] The Tenth Circuit has suggested that an ALJ's failure to complete the first step of the treating physician analysis does not always require remand. Some cases have held that an ALJ's failure to complete the first step is legal error which requires remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) ("A finding at this stage (as to whether the opinion is either unsupported or inconsistent with other substantial evidence) is ***necessary*** so that we can properly review the ALJ's determination on appeal.") (emphasis added); *Chrismon v. Colvin*, 531 F. App'x 893, 901 (10th Cir. 2013) (unpublished) ("Explicit findings properly tied to each step of the prescribed analysis facilitate meaningful judicial review" and are required to avoid remand.); *see also Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (finding error where "[a]lthough it [was] obvious from the ALJ's decision that he did not give [the treating source's] opinion controlling weight, the ALJ never expressly stated that he was not affording it controlling weight, nor did he articulate a legitimate reason for not doing so"); *Daniell v. Astrue*, 384 F. App'x 798, 801 (10th Cir. 2010) (unpublished) (quoting *Watkins*, 350 F.3d at 1300). Other cases have held that an ALJ's failure to explicitly state whether a treating physician's opinion is entitled to controlling weight is *not* legal error requiring remand. *See Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) ("Ms. Mays argues that the ALJ did not expressly state whether he had given Dr. Chorley's opinion 'controlling weight.' But the ALJ implicitly declined to give the opinion controlling weight. Because we can tell from the decision that the ALJ declined to give controlling weight to Dr. Chorley's opinion, we will not reverse on this ground."); *Causey v. Barnhart*, 109 F. App'x 375, 378 (10th Cir. 2004) (unpublished) ("Implicit in the ALJ's decision is a finding that Dr. Waldrop's opinion . . . is not entitled to controlling weight."); *see also Andersen v. Astrue*, 319 F. App'x 712, 721 (10th Cir. 2009) (unpublished) ("It is apparent that the ALJ concluded that these opinions were not entitled to controlling weight. Although ordinarily the ALJ should have made explicit findings to this effect . . . we are not troubled by the substance of the ALJ's determination."). The Commissioner is silent on whether the ALJ's failure to complete the controlling weight analysis is legal error and thus concedes the error. In addition, the Court does not remand solely based on the ALJ's failure to determine whether the treating physician's opinion was entitled to controlling weight. The ALJ also failed to give specific reasons for the weight given to the treating source's medical opinion, as discussed below.

10

The ALJ also failed to properly complete the second step of the treating physician analysis. There is no evidence that the ALJ adequately considered the six factors used in weighing a treating physician's opinion. *See* 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6). One reason the ALJ gave for giving Dr. Luzius' opinion "moderate weight' is that "Dr. Luzius offers opinions concerning the use of technical terms such as 'marked' B criteria of which he has no understanding of the significance." AR 19. This reason is not tied to any of the factors. In addition, even if this statement were tied to any factor, it does not explain why the ALJ rejected the numerous moderate and marked limitations contained in the MRFCA completed by Dr. Luzius. AR 415–16. The "B criteria" are only part of Dr. Luzius' assessment of the Listings and are not part of the mental limitations Dr. Luzius noted in the MRFCA. *See* AR 414–16.

The Commissioner claims that "substantial evidence" supports this reason, but does not explain what this "substantial evidence" is or what factor it is tied to, stating only that "it is of no consequence" because the ALJ's other reason for discounting Dr. Luzius' opinion is valid. Doc. 23 at 11. However, the ALJ did not adequately explain his reasoning. Furthermore, the Court agrees with Ms. Hidalgo that "[t]here is no basis for the speculation that Dr. Luzius," who is a "board certified psychiatrist who has been in practice for over 10 years," did not understand the term "marked." Doc. 24 at 5.

The only other reason the ALJ gave for the weight he assigned to Dr. Luzius' opinion— that Dr. Luzius "offered a checklist opinion with little or no explanation"—goes to the factor of supportability. In the Tenth Circuit, however, the ALJ cannot reject a treating physician's opinion solely on the basis that it is rendered on a checkbox-style form. Instead, the ALJ must examine whether checkbox-style forms are supported by the doctor's examinations of the patient or other clinical assessments before disregarding them. *See Carpenter v. Astrue*, 537 F.3d 1264,

11

1267 (10th Cir. 2008); *Chapo v. Astrue*, 682 F.3d 1285, 1289 (10th Cir. 2012); *Andersen v. Astrue*, 319 F. App'x 712 (10th Cir. 2009) (unpublished).  In *Andersen*, the Tenth Circuit remanded because the ALJ failed to provide "good reasons" for giving little weight to the treating physician's opinions.  319 F. App'x at 725.  Similar to the ALJ in *Andersen*, the ALJ in this case failed to give "good reasons" for the weight he gave treating psychiatrist Dr. Luzius' opinion.[7]  *See Andersen,* 319 F. App'x at 722–23 (finding that "the ALJ's apparent failure to consider any factor other than supportability makes the ALJ's reasoning insufficient" and that "the ALJ's cursory treatment of the physicians' opinions in this case does not satisfy us that the ALJ *considered* all the relevant factors").

Finally, and most problematically, the ALJ gave Dr. Luzius' opinion "moderate weight" but provided no explanation of why he incorporated or rejected the numerous marked and moderate limitations in Dr. Luzius' MRFCA into Ms. Hidalgo's RFC.  Ms. Hidalgo argues that "[i]t does not appear that the ALJ, in fact, gave Dr. Luzius' opinion 'moderate' weight given that he did not incorporate Dr. Luzius' findings" into the RFC or later steps of the sequential evaluation process.  Doc. 19 at 14.  The Commissioner argues that "[t]o the extent that Dr. Luzius's opinion was consistent with the residual functional capacity, the ALJ adopted those functional limitations."  Doc. 23 at 10 n.3.  The Court agrees with Ms. Hidalgo and finds that the ALJ failed to adequately tie his RFC conclusions to the evidence, and failed to adequately discuss the moderate and marked limitations in Dr. Luzius' MRFCA.

---

[7] The ALJ in this case gave Dr. Luzius' opinion "moderate weight," which makes this case distinguishable from *Andersen*, where the ALJ gave the treating physician's opinions "little weight."  *Andersen*, 319. F. App'x at 721.  However, the ALJ in this case appears to have tacitly given several mental limitations noted in Dr. Luzius' MRFCA little or no weight, making the reasoning in *Andersen* applicable in this case.

The ALJ's RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted." *Id*. When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. *See Southard v. Barnhart*, 72 F. App'x 781, 784–85 (10th Cir. 2003) (unpublished). In addition, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (internal citations omitted). When an ALJ fails to explain why he adopts some mental RFC limitations while rejecting others, remand is required "so that the ALJ can explain the evidentiary support for his RFC determination." *Id*.

In his MRFCA, Dr. Luzius found that Ms. Hidalgo had a marked limitation in "the ability to complete a normal work-day and work-week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR 415.[8] The ability to "maintain regular attendance and be punctual within customary tolerances" and the ability "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" are work-related mental abilities that are

---

[8] The Court does not analyze all of the conflicts between the RFC and Dr. Luzius' MRFCA, as remand is required if there is even one unresolved conflict.

critical for all jobs, and the ALJ must adequately address them in the RFC.  *See* POMS 25020.010(B)(2)(a).  In this case, the ALJ neither explained why he rejected this limitation, nor did he incorporate it into Ms. Hidalgo's RFC.  This is error.  *See* SSR 96–8p, 1996 WL 374184 at *7 ("If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.").

Similarly, Dr. Luzius found that Ms. Hidalgo had a marked limitation in the "ability to accept instructions and respond appropriately to criticism from supervisors" and in the ability to "get along with coworkers or peers without distracting them from or exhibiting behavioral extremes."  AR 416.  These are work-related mental abilities that are critical for all jobs, and the ALJ must adequately address them in the RFC.  *See* POMS 25020.010(B)(2)(c).  The ALJ incorporated Dr. Luzius' MRFC finding that Ms. Hidalgo had a "marked" limitation in her "ability to interact appropriately with the general public" in the RFC by finding that Ms. Hidalgo could "never engage in contact with the public."  *See* AR 17, 416.  It is unclear, however, how the ALJ accounted for Dr. Luzius' MRFC finding that Ms. Hidalgo had a "marked" limitation in her ability to "get along with coworkers."  AR 416.  The ALJ found Ms. Hidalgo had the RFC to "occasionally interact appropriately with supervisors and coworkers."  AR 17.  The ALJ fails to explain why a marked limitation in the ability to interact with the public would result in an RFC finding that Ms. Hidalgo could "never engage" with the public, while a marked limitation in the ability to interact with coworkers would result in an RFC finding that she could "occasionally" interact with coworkers.  Because the RFC conflicts with some of the limitations in Dr. Luzius' MRFCA, the ALJ must explain why these parts of Dr. Luzius' opinion were not adopted.  SSR 96-8p, 1996 WL 374184, at *7.  While there may be good reasons for the ALJ's RFC findings, the ALJ failed to provide those reasons in his decision.  The law requires the ALJ to adequately

describe how the evidence supports each conclusion. *Southard*, 72 F. App'x. at 785. This the ALJ did not do. In addition, the ALJ impermissibly picked and chose among the limitations in Dr. Luzius' opinion in violation of *Haga.* 482 F.3d at 1208. Because the ALJ failed to explain why he adopted some mental RFC limitations while rejecting others, remand is required "so that the ALJ can explain the evidentiary support for his RFC determination." *Id.*

## VI.     Conclusion

The ALJ erred by failing to conduct a proper treating physician analysis of the opinion of Dr. Luzius. The Court remands so the Commissioner can properly assess Dr. Luzius' opinion. The Court does not reach Ms. Hidalgo's other claimed errors, as these "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand the Administrative Decision (Doc. 18) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent